UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JAMES MURPHY EVANS

                                        CIVIL ACTION

VERSUS

                                        NUMBER 12-676-JJB-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY


### NOTICE

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein. Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, July 3, 2014.


                        STEPHEN C. RIEDLINGER
                        UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JAMES MURPHY EVANS

CIVIL ACTION

VERSUS

NUMBER 12-676-JJB-SCR

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY


## MAGISTRATE JUDGE'S REPORT

Plaintiff James Murphy Evans brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance and supplemental security income benefits ("SSI").

Based on the applicable standard of review and the analysis which follows, the Commissioner's decision should be affirmed.


### Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91

S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers

2

from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

## Background and Claims of Error

Plaintiff was 47 years old at the time of the administrative law judge's ("ALJ") decision. Plaintiff attended school until the eleventh grade and was employed from 1987 through August 2009 with the same company as an industrial millwright. AR pp. 125, 165-67. Plaintiff alleged that he became disabled and unable to work as of August 10, 2009, and filed applications for disability and supplemental security income on September 15, 2009. AR pp. 125-34.

Plaintiff had a long history of polysubstance abuse that began at the age of 18. However, the plaintiff was successfully employed until July 6, 2009. On that date he was admitted to the hospital because of a drug overdose. Plaintiff was found unconscious and on his admission the tests showed positive results for morphine, opiates, cocaine, benzodiazepines and alcohol. Plaintiff was in a

coma, he was breathing with the help of a ventilator, and stayed in intensive care for ten days. He was not discharged from the hospital until July 17, 2009. After his release from the hospital the plaintiff returned to his job, but after a few weeks he was terminated. According to the plaintiff, his employer thought he was using drugs again even though his drug screen was negative. On August 17, 2009 the plaintiff was readmitted to the hospital for confusion and a change in his mental status. The hospital records from this admission included an abnormal EEG test result, and the doctors diagnosed the plaintiff with encephalopathy, likely multifactorial, anoxic injury as well as Wernicke's encephalopathy.[1]

Plaintiff claimed that after his brief, unsuccessful attempt to return to work, he has been unable to work because of several mental and physical conditions - encephalopathy, hepatitis C, emphysema and asbestosis.

Plaintiff's application for benefits was denied at the initial

---

[1] Plaintiff also had a history of pneumonia, and a chest x-ray during this hospitalization also had findings consistent with asbestosis. On his discharge from the hospital on August 20, 2009 the plaintiff was released to the care of his mother and sister because at that time he needed 24-hour supervision. A month later the plaintiff underwent a neurological evaluation by Dr. Christopher D. Phillips. Dr. Phillips assessed that the plaintiff's encephalopathy, mixed/Wernicke's, was improved and he stated the plaintiff needed to follow up with his primary care physician and psychiatry. See, AR pp. 34, 253-282, 318, 321, 335, 340-45, 351-57. There is no evidence in the record that the plaintiff obtained follow-up psychiatric treatment.

stages and the plaintiff requested an ALJ hearing. After the
hearing the ALJ issued an unfavorable decision. AR pp. 14-52.[2]
The ALJ found at the second step of the evaluation process that the
plaintiff suffered from a combination of severe impairments –
Wernicke encephalopothy, organic mental disorder, anxiety disorder,
polysubstance dependence in remission, hepatitis C, lower back
pain, emphysema and asbestosis. At the third step, he found that
these conditions did not meet or medically equal the criteria of
any listed impairment under 20 C.F.R. Ch. III, Part 404, Subpart P,
Appendix 1. AR pp. 16-17.

The ALJ then evaluated the plaintiff's residual functional
capacity ("RFC") to determine, at the fourth and fifth steps,
whether the plaintiff was able to do his past relevant work or do
other work in the national economy. After a review of all the
evidence the ALJ concluded that despite these severe impairments,
the plaintiff had the ability to perform light work, except that
the plaintiff was limited to unskilled work, with no more than
incidental contact with the public, and limited to work that does
not involve excessive exposure to dusts, fumes, or other pulmonary
irritants.[3] AR p. 18.

---

[2] Plaintiff exhausted his administrative remedies before
filing this action for judicial review. The ALJ's decision is the
Commissioner's final decision for purposes of judicial review.

[3] Residual functional capacity is a measure of a claimant's
capacity to do physical and mental work activities on a regular and
sustained basis. It is the foundation of the findings at steps

Given this RFC, and considering the plaintiff's age, education
and work experience, vocational expert Thomas Mungall testified
that the plaintiff was not able to engage in his past employment as
an industrial millwright. AR p. 37. However, in response to the
ALJ's question, Mungall testified that the plaintiff could perform
the job of fast food worker, and that job existed in significant
numbers in the national economy. AR pp. 37-39. Based on this
vocational evidence the ALJ concluded at the fifth step that the
plaintiff was not disabled. AR pp. 23-24.

Plaintiff argued in his petition for judicial review and that
the Commissioner's final decision should be reversed and remanded
because several errors were committed by the ALJ. In the
Plaintiff's Memorandum in Support of Appeal (hereafter,
"Plaintiff's Memorandum") he made the following arguments: (1) the
ALJ failed to adequately discuss why he found the plaintiff did not
meet the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1,
Section 12.02; (2) no evidentiary choices exist to support the
ALJ's RFC finding, therefore the ALJ impermissibly relied on his
own medical opinion to determine the plaintiff's mental residual

---

four and five. 20 C.F.R. §§ 404.1545; 416.945.
    "Light work involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10
pounds. Even though the weight lifted may be very little, a job is
in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some
pushing and pulling of arm or leg controls." 20 C.F.R. §§
404.1567(b); 416.967(b).

functional capacity; (3) the vocational expert testimony is at odds with the Dictionary of Occupational Titles, and the ALJ failed to resolve the conflict as required in Social Security Ruling 00-4p; and, (4) the plaintiff's allegations were improperly rejected without the assessment of his credibility required by the regulations.

## Analysis

**The ALJ did not commit error in his analysis and finding at the third step.**

At the third step the ALJ analyzed whether the plaintiffs' mental impairments considered singly and in combination met or medically equaled the criteria of listings 12.02 (Organic Mental Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addiction Disorders).[4] The paragraph B criteria for listings 12.02 and 12.06 are the same. Therefore, the ALJ considered the evidence in light of these criteria, and found the plaintiff did not satisfy the listing requirements because he did not have a least two marked limitations, or one marked limitation and repeated episodes of decompensation of extended duration. The ALJ further found that the evidence failed to establish the presence of the paragraph C criteria of listings 12.02 and 12.06. Plaintiff argued that the

---

[4] Listing 12.09 covers substance addiction disorders, and it does not have its own criteria. It contains a descriptive paragraph, and then states that the listing is met if the criteria of one of ten other listings are satisfied.

ALJ committed reversible error because he did not compare the paragraph A and paragraph C criteria to the evidence, when a comparison would have resulted in a finding that the requirements for listing 12.02 are satisfied.

This claim of error is unsupported.[5] To satisfy listing 12.02 a claimant must satisfy the requirements of both paragraphs A and B, or the requirements of paragraph C.[6] Plaintiff argued that even though the evidence showed he had several of the symptoms of paragraph A - disorientation to time and place, memory impairment and change in personality, the ALJ failed to address paragraph A or the evidence which established these abnormalities. However, even if the ALJ should have, but did not analyze whether the evidence established the criteria of paragraph A, this error was harmless. The level of severity for organic mental disorders requires that both paragraphs A and B are satisfied. Plaintiff did not argue or dispute the ALJ's analysis and finding that his mental impairments did not fulfill the criteria of paragraph B. If the plaintiff

---

[5] Plaintiff relied on the Fifth Circuit decision in *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). However, the record in this case does not present a situation that is similar to the one that resulted in reversal and remand in *Audler*. In *Audler* the ALJ failed to identify the listed impairment that applied to the claimant's symptoms, and summarily concluded, without any analysis or explanation as to how she reached the conclusion, that the claimant's impairments were not sufficiently severe to meet any listed impairment.

[6] Record document number 12, Plaintiff's Memorandum, pp. 10-11.

cannot satisfy the requirements of paragraph B, then the lack of an analysis of paragraph A is immaterial. Therefore, the ALJ's failure to specifically consider part A of the listing is harmless error.[7]

Plaintiff also argued that despite the ALJ's finding that the C criteria of listing 12.02 are not met, there is evidence in the record which shows the criteria of paragraph C.2 are satisfied in this case.

Part C of listing 12.02 provides as follows:

C. Medically documented history of a chronic organic mental disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

---

[7] The primary policy underlying the harmless error rule is to preserve judgments and avoid waste of time. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Thus, procedural perfection in administrative proceedings is not required. A judgment will not be vacated unless the substantial rights of a party have been affected. Procedural improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.; Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

The ALJ's finding that the evidence failed to establish the presence of the paragraph C criteria is supported by substantial evidence - the findings of state agency psychological consultant Joseph Tramontana, Ph.D.  AR pp. 522-36, 534.  Furthermore, the plaintiff's argument that the record shows he satisfies paragraph C.2 of the listing is unsupported. While the medical tests and records establish an organic mental disorder - encephalopathy - of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, the plaintiff failed to cite objective medical tests and evidence that establishes the remaining criteria.

An impairment cannot meet the criteria of a listing based only on a diagnosis.  For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing.  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, *supra*; 20 C.F.R. §§ 404.1525(d); 416.925(d).  Plaintiff cited several pages of the administrative record, but did not explain how these records establish the findings necessary to meet the criteria of paragraph C.2 - that the plaintiff has a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment is predicted to cause the individual to

decompensate.[8]

In summary, the ALJ did not commit a reversible legal error at the third step and his finding at the third step is supported by substantial evidence.

**The ALJ did not err in weighing the evidence related to the plaintiff's mental impairments, and did not impermissibly rely on his own medical opinion to determine the plaintiff's mental RFC.**

Plaintiff argued that in determining the plaintiff's RFC, and in particular his mental restrictions, the ALJ relied on the opinions of psychologist Fred L. Tuton[9] rather than those of Alan L. Taylor, but then failed to adopt mental restrictions assessed by Tuton. In these circumstances, plaintiff argued, the ALJ impermissibly relied on his own medical opinion to determine the RFC, and therefore his finding is not supported by substantial evidence.

Plaintiff's argument is not supported by the record or the case law he cited. It is apparent from review of the ALJ's

_____

[8] Plaintiff cited three pages of the record. Two of the pages were the plaintiff's testimony about the loss of his job flowing his return to work several weeks after he was released from the hospital. AR pp. 34-35. The other page was from the psychological evaluation/report done by Alan L. Taylor, Ph.D., in December 2009, where the plaintiff reported to Taylor that he had confusion, poor coordination, short-term memory loss, slurred speech, and disorientation. AR p. 517.

[9] AR pp. 540-44, Tuton psychological evaluation/report of March 24, 2010; AR pp. 516-19, Tayler psychological evaluation/report of January 12, 2010.

decision that the ALJ carefully considered and weighed the reports of Taylor, Tuton, state agency psychological consultant Tramontana, and the other relevant evidence. As the trier of fact, ALJ considers and weighs all the evidence, resolves conflicts in the evidence and draws reasonable inferences from the evidence.[10] Consequently, the ALJ is not required to include all the limitations in one or another psychologist's report in his RFC finding. After weighing all the evidence and resolving conflicts in the evidence, the ALJ makes his findings and they must be upheld if supported by substantial evidence. The evidence credited by the ALJ from the reports of Taylor, Tuton, and Tramontana constitute substantial evidence to support the ALJ's findings with regard to the plaintiff's RFC and mental limitations.

Furthermore, the present record is unlike the circumstances that supported a finding of error in *Williams v. Astrue*[11] and *Ripley v. Chater*.[12] In *Ripley,* the ALJ reviewed the claimant's four year history of surgery, medical exams and complaints of pain. But there was a total absence of any medical source statement/reports

_____

[10] It is the task of the ALJ as the finder of fact to weigh the evidence. When evidence cuts both ways, it is not the court's job on judicial review to reweigh the evidence. As long as there is substantial evidence in the record as a whole supporting the ALJ's finding, it must be upheld. *See*, *Greenspan v. Shalala*, 38 F.3d 232, 240 (5th Cir. 1994); *Short v. Astrue*, 2013 WL 655020 (N.D. Tex. Feb. 5, 2013).

[11] 355 Fed.Appx. 828, 832 (5th Cir. 2009).

[12] 67 F.3d 552, 557-58 (5th Cir. 1995).

from qualified medical experts regarding the effects of the claimant's condition on his ability to work. The only evidence in the record regarding the claimant's ability to work came from the claimant's own testimony. In these circumstances the Fifth Circuit found that the ALJ's RFC determination was not supported by substantial evidence. In *Williams* there were opinions from three treating physicians who stated that the claimant could not stand for six hours in an eight-hour day. However, the ALJ rejected all of these opinions and, based on some medical records, concluded the claimant was capable of light work. Citing *Ripley*, the court found that the ALJ was relying on his own unsupported opinion as to the plaintiff's limitations without opinions from medical experts. The court stated that the ALJ could not do this and his RFC finding lacked substantial evidence.

These factors are not present in this case. Here, in determining the plaintiff's RFC the ALJ had numerous medical source statements from qualified psychologists to consider and weigh, along with the plaintiff's treatment records and the hearing testimony. Plaintiff's claim of error based on *Ripley* and *Williams* is without merit.

**The ALJ did not improperly reject the claimant's allegations without the assessment of his credibility required by the regulations.**

While the ALJ must consider a claimant's subjective complaints,

he may find that those complaints are not credible or are exaggerated in light of the objective medical and other evidence of record. The ALJ is not required to give subjective evidence precedence over objective evidence. *Anthony v. Sullivan,* 954 F.2d 289, 295-96 (5th Cir. 1992); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ's evaluation of the claimant's credibility is entitled to deference and must be upheld if it is supported by substantial record evidence. *Id.*

Plaintiff acknowledged that an ALJ may rely on a lack of treatment as an indication of nondisability.[13] However, the plaintiff argued that it was error to do so in this case because the failure to seek treatment may be attributable to the plaintiff's mental impairment. Plaintiff also generally argued that the ALJ did not follow the regulations in assessing his credibility, and improperly discounted his credibility without a sufficient rationale.

With regard to lack of treatment, the plaintiff's argument that it may be caused by or attributable to his mental impairment is simply speculation.[14] Plaintiff did not cite to any objective

_____

[13] Plaintiff did not dispute the ALJ's observation that the plaintiff has not sought any mental health treatment since his release from the hospital in August 2009. AR p. 22.

[14] Record document number 12, Plaintiff's Memorandum, p. 14.

evidence in the record that supports this assertion.[15]  Moreover,
a review of the ALJ's decision shows that he cited the correct
standards governing the credibility determination, and then
properly applied those principles.  The ALJ reviewed all the
relevant evidence and concluded that the plaintiff's statements
about the limiting effects of his impairments were not credible,
to the extent they were inconsistent with the residual functional
capacity finding.  This conclusion is supported by substantial
evidence contained in the record as a whole.[16]

In addition to considering the plaintiff's failure to seek
mental health treatment despite the recommendations that he do so,

---

[15] Plaintiff cited a Sixth Circuit case and several unpublished
decisions in support of this argument.  Record document number 12,
Plaintiff's Memorandum, pp. 15-16.  The cases are not controlling
or persuasive.  The treatment history and nature/types of mental
impairments suffered by the claimants in these cases were not
similar to plaintiff's impairments and record of treatment.  There
was an evidentiary basis in the record for finding the lack of
treatment/noncompliance was attributable to the mental impairment.

[16] If the ALJ's credibility determination is supported by
substantial evidence, the fact that there is also evidence which
supports  the claimant's credibility is not a basis for reversing
the ALJ's decision. Judicial review under § 405(g) does not require
that all of the evidence support the ALJ's findings.  Even if
substantial evidence supports the claimant's position this is not
a ground for reversal. As long as the finding or decision is
supported by substantial evidence in the record as a whole it must
be affirmed.  § 405(g); *see*, *Carroll v. Dept. Health, Ed. and
Welfare*, 470 F.2d 252, 254, n. 4 (5th Cir. 1972); *Haley v.
Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Palomino v. Barnhart,*
515 F.Supp.2d 705, 710 (W.D. Tex. 2007), citing, *Chambliss v.
Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole
indicates a mixed collection of evidence regarding plaintiff's
impairments and their impact, Commissioner's decision upheld as
long as there is substantial evidence to support it).

the ALJ reviewed the plaintiff's testimony and statements about his daily activities, and the reports of the mental status examinations performed by Taylor and Tuton. For example, Taylor noted in his report that all behavioral observations were normal, the plaintiff's judgment was fair, and his thought rate and continuity were within normal limits. Taylor also found the plaintiff had the ability to understand and carry out simple instructions, and could respond appropriately to supervision and interact appropriately with co-workers. AR pp. 518-19.

Tuton performed a mental status examination and memory tests in March 2010. Plaintiff told Tuton that the socialized with friends and fished by himself. Tuton reported the plaintiff did not need help filling out the patient form and questionnaire, he had normal and appropriate speech, and was oriented to person, place, time and situation. In addition, Tuton found the plaintiff's vocabulary and verbal usage established average intellectual functioning, his remote and recent memory were intact, he was able to maintain concentration and persistence during the evaluation, and the plaintiff handled and was capable of handling his own financial affairs. AR pp. 541-44. The results of the memory tests performed by Tuton showed the plaintiff's immediate and delayed auditory memory were average, and general memory and immediate memory were low average. AR p. 543.

Tramontana's assessment was that the plaintiff had only a mild

degree of limitation in activities of daily living, maintaining social functioning, and concentration persistence and pace. AR p. 533. The ALJ also noted that the plaintiff has been able to exercise the control necessary to abstain from drug and alcohol use since August 2009.

The above evidence is sufficient for a reasonable mind to accept as adequate support for the ALJ's conclusion that the plaintiff was not entirely credible.[17] Therefore, the plaintiff failed to demonstrate that the ALJ applied an incorrect legal standard, or that the ALJ's finding was supported by less than substantial evidence. This claim of error is without merit.

**The vocational expert testimony relied on by the ALJ carried the Commissioner's burden of proof at the fifth step.**

Plaintiff argued that Mungall's vocational testimony of did not carry the Commissioner's burden of proof at the fifth step. Plaintiff's contention is that the expert's testimony identifying the job of fast food worker is at odds with the Dictionary of Occupational Titles (DOT). Plaintiff argued that common sense dictates, and it was apparent, that the requirements of the job

---

[17] With regard to the plaintiff's RFC to perform the physical and skill requirements of work, the ALJ determined the plaintiff was able to do light, unskilled work. Plaintiff did not challenge this finding. The only assessment of the plaintiff's physical RFC in the record was by Delise Holliday, single decisionmaker, on March 26, 2010. AR pp. 550-57. This physical RFC assessment supports the finding that the plaintiff is capable of performing light work.

were inconsistent with the plaintiff's limitations (restrictions in ability to deal with the public and need to avoid exposure to respiratory irritants) and the description of the job found in the DOT. According to the plaintiff, the ALJ's failure to identify this conflict and obtain an explanation from the expert, as required by SSR 00-4p, rendered the vocational testimony he relied on insufficient to meet the Commissioner's burden of proof at the fifth step.

The Commissioner noted that the DOT lists the maximum requirements of occupations as generally performed. The categorical requirements listed in the DOT do not and cannot cover every situation. The value of a vocational expert is his familiarity with the specific requirements and working conditions of a particular occupation and the attributes and skills needed to perform it.[18] Based on these principles, the Commissioner argued that the vocational testimony obtained in this case demonstrated that the plaintiff could do other work. The Commissioner argued that Mungall's testimony showed a fast food worker's job could be done by a person with the plaintiff's limitations. Therefore, neither common sense nor the DOT give rise to a direct or apparent conflict that should have been identified and resolved by the ALJ, and any failure to follow SSR 00-4p was harmless error. Citing

---

[18] *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000); *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir. 1995); *Haas v. Barnhart*, 91 Fed.Appx. 942 (5th Cir. 2004).

*Carey v. Apfel*, the Commissioner also argued the plaintiff's claim that the conflict with the DOT was apparent should be rejected because the plaintiff's counsel failed to raise the issue at the hearing when the expert testified.

The fundamental premise of the plaintiff's claim of error is that the plaintiff's limitations in public contact and exposure to pulmonary irritants conflicts with the specific skills required for a fast food worker job based on common sense and as the job described in the DOT. Plaintiff's argument is unpersuasive for several reasons. Plaintiff's position that the conflict is apparent is undermined by the fact that his counsel represented him at the hearing and heard the expert's testimony, yet failed to question or raise the issue at that time. Plaintiff also did not cite any authority for his argument that a direct/apparent conflict can be based on common sense. Furthermore, it is not apparent that the DOT description relied on by the plaintiff conflicts with the ALJ's RFC finding.

According to the plaintiff, the DOT description for fast food worker states that the individual is required to "serve customers, receive payment, and perform incidental cooking, such as french fries."[19] Contrary to the plaintiff's arguments, the ALJ did not find that the plaintiff was unable to deal with the public and needed to avoid exposure to cooking fumes and respiratory

---

[19] Record document number 12, Plaintiff's Memorandum, p. 14.

irritants.[20]   Plaintiff failed to explain how the fact the ALJ limited him to no more than incidental contact with the public, related to the work being performed, would prevent him from serving customers/receiving payments.  And the plaintiff failed to explain how a restriction to work that requires a lower concentration of, or does not involve excessive exposure to, dusts, fumes or other pulmonary irritants, would prevent him from performing incidental cooking.

The ALJ stated in his decision that the vocational expert's testimony was consistent with the information contained in the DOT, but the ALJ did not specifically ask Mungall the question during the hearing.  AR pp. 24, 37-39.  This did not comply with SSR 00-4p.[21]  However, this error is harmless because the plaintiff has not established that there is an apparent, unresolved conflict between the vocational evidence and the DOT, or otherwise explained what evidence could have been elicited that would have undermined the ALJ's finding at the fifth step.

## Conclusion

Review of the administrative record as a whole and the analysis above demonstrates that the plaintiff's claims of error

---

[20] AR p. 18, Finding 5.

[21] "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicatory will inquire, on the record, as to whether or not there is such consistency."  SSR 00-4p, 2000 WL 1898704(S.S.A. December 4, 2000).

are without merit. The proper legal standards were applied and substantial evidence supports the finding the plaintiff is not disabled because he can perform other work that exists in significant numbers in the national economy.

## RECOMMENDATION

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying the application of plaintiff James Murphy Evans for disability insurance and supplemental security income benefits be affirmed, and this action be dismissed.

Baton Rouge, Louisiana, July 3, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE